Taliaferro, J.
The plaintiffs seek to render the defendants responsible for the value of a set of jewels lost by Mrs. Yznaga while on board the steamer as a passenger, and of which she alleges she was robbed by thieves, who opened and entered her state room in the night time. This loss she avers was caused by the fault, negligence, and want of care of the officers of the boat in not guarding with sufficient diligence against the occurrence of such acts; that during the trip, on *91 which this theft or robbery was committed, there were professional thieves allowed by the officers to come on board and take passage and travel on the boat; that a large number of immigrants or deck passengers were on board, who, contrary to custom and propriety, were permitted to sleep upon the floors around her rooms, endangering the safety of her property, baggage, etc., and rendering her position on board most disagreeable and uncomfortable.
She avers that she was denied suitable rooms for herself and daughters in the ladies’ cabin, but was required to occupy rooms in the gentlemen’s cabin, where she was more exposed to the danger of theft. She alleges the value of the stolen property to be $6015, and prays judgment for that amount with interest from judicial demand and costs of suit, with lien and privilege on the boat, etc.
The answer specially denies every allegation of the plaintiff, tending to charge defendants with liability for the alleged loss; and avers that ii’.any such loss did occur on board their boat, it arose from want of prudence and care on the part of the plaintiff, and not by the fault of the defendants.
The case was tried before a jury. A verdict was rendered in favor of the defendants, and from the judgment in pursuance of the verdict the plaintiffs have appealed.
It seems that Mrs. Yznaga with her three children, in returning from a summer tour in 1869, took passage at Memphis in November of that year for Waterproof, in the parish of Concordia, in this State, on board the steamer Richmond. During the voyage, Mrs. Yznaga discovered one morning on rising from bed, that the pocket of her dress, which had hung during the night in her state room, had been cut and her jewels enclosed in a small box, left in the pocket on retiring to rest, had been abstracted. Notice was soon given, and by general consent of all the passengers on board, a search was made of their persons and baggage, but without success.
The allegation that there were professional thieves on board the boat, and that to the knowledge of the officers of the boat, we do not find sustained by the evidence. Two men who took passage at Memphis for Helena, and paid their passage to that place, did not leave the boat on arriving there, and this aroused the suspicion of one of the clerks that the men were dishonestly intending to 'reach some point lower down the river without paying the additional fare. One of these men paid the additional sum required, but was severely beaten by the clerk and put on shore at some way landing above Yicksburg. The other also, by the clerk’s testimony, was “thrashed,” as he termed it, and discharged. These were the only persons on board shown to be of exceptional conduct. Nobody, it seems, suspected them of being *92 thieves. On one occasion only, it appears, were immigrants allowed to sleep in a different place from that assigned them, and that was a case where a family that had'known better days, were allowed for one night only a more comfortable place for lodging, an accommodation granted at the solicitation of a number of the cabin passengers who paid by contribution the charges made for the accommodation. But the place assigned this family was at a considerable distance, from the plaintiff’s rooms. The family left the boat the next day and before the robbery took place.
The large number of female passengers on that trip of the boat placed it out of the power of the officers to furnish the plaintiff and her daughters state rooms in the ladies’ cabin, a fact of which Mrs. Yznaga was distinctly informed before she came on board. She was shown comfortable rooms in the gentlemen’s cabin, which she accepted and expressd herself satisfied with. The evidence shows that the plaintiff and her family were not placed in a situation more exposed to depredations of the kind she complained of, than were the other passengers. The same efforts appear to have been made by the captain and clerks for the security and comfort of the plaintiff and family that were made for others.
The rule seems to be generally adopted and sanctioned, that in order to render the carrier liable for losses of baggage or goods shipped as freight, they must be delivered and entrusted to the carrier; and in regard to baggage the liability of the carrier does not extend beyond the value of reasonable articles of apparel or convenience, and for such sum as might be deemed necessary for his expenses according to the passenger’s condition in life and the journey undertaken by him. 7 An. 362; Simon v. Miller and 5 An. 604; M. & T. Bank v. Gordon; 18 An. 664; 20 An. 402; 1 Martin, 196.
Mrs. Yznaga, it appears from the evidence, isa lady who has traveled in Europe as well as in the United States and other countries, and is not without knowledge of the caution which a person of prudence should use when traveling, to avoid losses from sharpers and thieves found in all countries along the principal lines of travel. She says in her own testimony that while at the Galt House in Louisville, she was in the habit of depositing her jewelry in the safe of the hotel whenever she went out. On her trip down the river from Memphis she was unaccompanied by her husband or any male friend, having with her three children, the eldest a girl of about twelve years of age. The jewels were carried constantly in the pocket of her dress, and left in it at night when she retired to rest. Frequently during the day she went forward in the cabin among the large number of passengers; and on one occasion, when her sympathies were excited in behalf of the pas *93 sOnger whom tlie-elerk was beating and about to put ashore, for the reason, as she supposed, that he was unable to pay his passage, she rushed down to the lower deck among a large and promiscuous crowd of men, and offered to pay the man’s passage.
The evidence clearly establishes in our minds that there was on her parta great want of circumspection and care in reference to the security of the valuables which she lost, and that the loss may, to some extent, be attributed to her own lack of precaution, and not to any fault of the officers of the boat who had never had the jewels in their custody for safe keeping, and who doubtless were entirely ignorant that she had such articles until their loss was announced.
The case was before a jury, and we are satisfied they made the proper disposal of it.
It is therefore ordered that the judgment of the district court be affirmed with costs.
Rehearing refused.